The Judges of the United States Court of Appeals for the 4th Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Alright, thank you. You can be seated. I want to welcome this morning the Classroom Open High School and the teacher, Jacqueline Bruce. We're glad to have you and hope you learned something from watching arguments from these outstanding lawyers that we have here in the course this morning. Mr. Burke, whenever you're ready. May it please the Court. Good morning. My name is Michael Burke and along with my co-counsel Sarah Stone, I represent Petitioner Appellate Brandon Basham. I have reserved five minutes of my allotted time for rebuttal today. In its opinion affirming Mr. Basham's convictions and sentences on direct appeal, this Court held that the Constitution entitles a criminal defendant to a fair trial, not a perfect trial. And the Court concluded that although Mr. Basham did not receive a perfect trial, it was confident that he had received a fair trial. I submit respectfully that the evidence that was presented in Mr. Basham's 2255 proceedings should give this Court pause to reconsider that conclusion. With the Court's permission and time permitting, I would like to address three particularly troubling aspects of Mr. Basham's trial. First, the substantial evidence that Mr. Basham was incompetent at various times during his trial. Second, trial counsel's failure to move to suppress as a violation of Edwards v. Arizona, Sheriff Ron Hewitt's questioning of Mr. Basham during the Thanksgiving Day search. And third, trial counsel's failure to make any attempt to limit the extensive unduly prejudicial testimony from Samantha Burns' family and friends concerning her death. Concerning competency, Your Honors, as the Court is aware, the test for competency has been the same for 55 years set forth in the Dusky case. The test is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. We submit that we have established by a preponderance of the evidence that Mr. Basham, at various times during both the guilt and penalty phase of his trial, failed to meet that standard for competency. So your position is he's competent sometimes, incompetent other times during the trial? Yes, Your Honor. And what do you attribute that to? Well, we know, Your Honor, going into the trial, Mr., and it's undisputed, Mr. Basham had been diagnosed, he had an extensive history, as the Court is aware, of psychological treatment. He had been diagnosed with ADHD, with intermittent explosive behavior, or excuse me, disorder. He had been diagnosed with psychosis, including auditory hallucinations. He had been diagnosed with panic disorder. He had been diagnosed at the age of 23 with dementia, resulting from his extensive use of inhalants since childhood. And he had an IQ of 68 at the time of trial. All of those factors combined caused Mr. Basham to be unable to sit through the nine-week trial to which he was subjected. In addition to that, Your Honor... But you're not making an argument that he was incompetent for the whole trial. Your argument is limited to some specific dates. Yes, Your Honor. So why don't you tell us about those dates? Certainly, Your Honor. Let me back up from that just a little bit, Your Honor, because we do know from the beginning of Wadir that Mr. Basham was dozing and sleeping at the table. He was medicated every day with a combination of medications, Seroquel, an antipsychotic, Concerta and Ritalin for ADHD, Neurontin for mood stability, and Paxil and Valium every day. But, Kent, I know you're on it. The train's moving, and you're on it. But your arguments are limited by brief, very specific instances on specific days. So I think we've got the background. I would focus on those instances on why on those days you say he was incompetent. Thank you, Your Honor. Let's turn, then, not necessarily going chronologically, let's turn to October 26, 2004, during the penalty phase. That day, the record reveals that Mr. Basham was not given his Seroquel before trial. So Judge Anderson, after consulting with counsel, delayed trial until the afternoon so that Mr. Basham could be given his Seroquel. When trial began that afternoon, counsel for Mr. Basham asked for an additional 15 minutes because they were having difficulty working with their client. After that 15 minutes was afforded them, trial began, and Mr. Harris, one of the co-counsels for Mr. Basham, said to the court, Your Honor, Mr. Basham is not able to go forward. And Judge Anderson's response was, how many times in this trial? Now, this was about the eighth week of trial. How many times in this trial have we had to stop this trial because of Mr. Basham's problems, his behavior? And then the government then complained and said, if this is a competency issue, they should be bringing in their expert to testify if he's competent or not. Judge Anderson said, I am in a very difficult situation. The jury is tired. They've been here a long time. I'm getting feelings from them that they are tired. And I feel that even though this isn't his fault, we just need to go forward. And, Your Honors, I would submit that it was a violation of the established law with regard to determinations of competency. The question was not whether the court needed to go forward. It was whether Mr. Basham was able at that time to communicate with his clients, with his attorneys. And there's no question that his attorneys were saying that he was not able to do that. And so later in the afternoon, as the trial proceeded, Jack Swerling, lead defense counsel, again made a record. And he told the court, Mr. Basham is slurring his words, he is sleeping, he is groggy, and he's just out of it. The trial continued. In denying Mr. Basham's 2255 motion, Judge Anderson concluded that there was no evidence on the 26th that Mr. Basham was incompetent. And we submit that that is a clear error in the finding of fact, given the record that has long been established, that the counsel were saying that there was a problem. And, Judge Ager, another particular event is the event of September the 20th. As the court is aware, on that day, Mr. Basham was brought into court in the afternoon. There had been some discussion with the counsel and with Judge Anderson trying to work out ways to keep Mr. Basham awake and alert during his trial. And there had been some discussion that if he was given chew or dip, that that had a stimulating effect on him and would keep him awake. The government opposed this request, and the U.S. Marshals indicated that there might be some danger involved because Mr. Basham had a history of throwing fluids. When they came into court that afternoon, Judge Anderson made his decision that… The judge was afraid that Mr. Basham was going to start spit tobacco use in court. Yes, Your Honor. On people. Yes, Your Honor. And… And there was some evidence to back that up. Yes, there was, Your Honor. And based on that concern, Judge Anderson said, you're not allowed, I'm not going to allow you to have the dip. Mr. Basham then said… What is this, dip of snuff? Is that what they're doing? It's chewing tobacco. According to the record, it's a wintergreen-flavored tobacco that Mr. Basham would stick in his mouth. The judge said he changed his mind. Yes, Your Honor. He lied to me. Yes, Your Honor. And what then occurred was Mr. Basham, before he got mad, said, I would like to go back downstairs. And Judge Anderson said, I'm not going to allow that. Your counsel wants you here. We've submitted the videotape and the audiotape of what then occurred. It lasted about eight to ten minutes. And what occurs is a struggle. Mr. Basham refused to sit down. And the U.S. Marshals, there were eight of them there. They grabbed his arm and, to use Mr. Swirling's words later, he just went ballistic. He lost. And an eight to ten minute physical struggle ensued, during which Mr. Basham was screaming. And at one point had eight marshals on top of him. And we submit, at that moment, he was not able, in any sense of the word, to communicate with his counsel in a rational manner. He could not. He was not in a rational state at that time. He was eventually removed from the courtroom. And immediately upon his removal, defense counsel said, we are concerned about his competency. We have contacted our expert, Dr. Donna Schwartzwatz. Dr. Schwartzwatz was three blocks away. She evaluated Mr. Basham and concluded that he was not competent. Now, the government has said that evidence only suggests that Mr. Basham was incompetent after the events that occurred. But that, in my mind, defies common sense. What's the significance of, let's say, just for purposes of argument, that at some point in time during this chewing tobacco moment in court, that Mr. Basham was incompetent. Nothing transpired in court at that time, other than the incident. Court was adjourned for the day, so nothing transpired after that. And am I correct that Mr. Basham's medical experts said he was competent for trial to begin the next day? Yes, Your Honor. So what's the point? The point is that the videotape that we submitted and the audio tape that we have submitted was used at sentencing. So it's really an argument for the penalty phase, not the guilt phase. Yes, Your Honor. It is a yes. And please understand, we believe that Judge Anderson acted entirely appropriately that day. He did exactly what he was supposed to do. Our complaint about Judge Anderson's ruling is in the 2255, where he says he doesn't have to accept what Dr. Schwartzwald said at the time, and that he doesn't believe that Mr. Basham was competent. Our standard, this is a substantive competency claim that we have raised. And our standard is that we need to show by a preponderance of the evidence that Mr. Basham didn't meet the DUSCIE standard. And in preparing for argument, I'd like to share something with you that I sort of support. Not to interrupt you too much, but in trying to get a grasp of the impact of the guilt phase, I mean the penalty phase, You correct me if I'm wrong, I thought the government offered the tape of this incident with the marshals to show future dangerousness. That's correct. That's right. But the verdict formed by the jury would seem to exclude future dangerousness as a choice that they made. Correct. So tell us how this is of any benefit to you. Well, and that was the point that I was going to make that surprised me too, Your Honor. First, we don't need to show that there was any actual prejudice. If we show that he was incompetent, the court's analysis stops. He was deprived of due process. But I will say this, that that jury who saw that videotape, not a single one of those jurors found that Mr. Basham presented a risk of future dangerousness based on that evidence. And I would suggest that was because those jurors, as laypeople, saw a man who was not in a competent state. They realized that that man was in distress and that this was not a reflection of who he was. And so I think the jury in this case taught us a lesson that Mr. Basham was incompetent at that time. Very briefly, as I'm about out of time, I would like to also address the question. Take your time. We realize the seriousness of this case, so we're not going to hold you strictly to those time limits. Go ahead. Well, and I also realize that we've thrown out several issues for you. This court, on numerous occasions, has heard evidence concerning the testimony from Sheriff Ronald Hewitt about statements made by Mr. Basham during the search on Thanksgiving Day regarding the strap. Our position is that that questioning of Mr. Basham on that day was a blatant violation of Edwards v. Arizona. And that counsel had an obligation to move to suppress those statements, and those were critical statements throughout the trial. And at trial— And you're getting at those under an ineffective assistance claim. Yes, Your Honor. Yes, Your Honor. We also have an individual claim, a separate claim under NAPU, that the government knew when Sheriff Hewitt testified that— Yes, Your Honor. Yes, Your Honor. —about what he had said. Exactly. And we— Right? And they then argued— There was an argument, so there was a dispute as to which one had actually killed Ms. Donovan with the strap, because he demonstrated how it was used, and it's kind of ambiguous. Our earlier opinion said that the record doesn't show which one did. That is correct. Okay. In our case, the jury— We don't have to worry about it. No, what I'm saying to you in this case is that the government actively argued to the jury that Mr. Basham was, in fact, the actual killer. After it had spent quite a bit of time during jury voir dire making sure that they selected jurors who would be able to convict— Well, they weren't entitled to argue that that was a permissible inference from what was presented? Yes. I mean, they can argue inferences. Your Honor, may I answer your question? Well, you have your judge's fractures. Okay, all right. They were allowed to argue reasonable inference in the evidence. Our argument, though, is that— That that's not a reasonable inference? No, no. That the testimony itself, they had reason to know the testimony itself was false. That the government had reason to know? Yes, Your Honor. Well, that's pretty hard to show. The government's theory was it didn't make a bit of difference which one did it. They were in it together. They ran off from the prison in Kentucky together. They went to West Virginia and killed Ms. Burns together. They went to—after kidnapping her. They went to South Carolina and kidnapped Ms. Donovan and took her to North Carolina and killed her. And they did it all together. They aided and abetted each other. It didn't make one iota of difference which one did what, which one drove the car, which one used the strap, which one did anything. They were both responsible for everything that was done. I thought that was the government's argument. That was the government's argument except for the fact— That's the law. Under the federal law, aiding and abetting. Yes, Your Honor, but we also have to realize that under aiding and abetting, you're absolutely correct, Your Honor, but this jury had another responsibility. They had to decide whether to give Mr. Basham the death penalty. Right. And we cannot know what effect that testimony had on their decision. Thank you very much, Your Honor. You had a third issue there. You mentioned the Burns evidence. Yes, Your Honor. Now, what constitutional theory—is that ineffective assistance also? Yes, it is, Your Honor. But they didn't sufficiently object or didn't object? They didn't object. And it's a multi-tiered argument. Was it, in fact, intrinsic evidence? We don't believe it necessarily was. But even if it was, they, at the very least, could have moved under Rule 403 during the guilt phase to limit the number of witnesses who testified. This was testimony from— This is the Burns family evidence you're talking about? Yes, Judge Agee. It was the mother, the father, the brother, the aunt, and two friends. And the defense lawyer's theory was that he made a strategic decision. To let it in in the guilt phase, it was a better time to put it all out there rather than that it would be more prejudicial when it came in in the penalty phase. Yes, that is what Judge— And that's a tactical decision that lawyers have to make. These lawyers didn't have very—they had a tough job. They absolutely did. They had some bad cards. They absolutely did. We don't deny that. But because of that, they had an obligation to try to limit this evidence. And they made no effort. There's no strategy behind not limiting the evidence. And we know Judge Anderson was particularly cautious in his evidentiary rulings. It is almost certain that he would have limited the testimony that was presented about Samantha Burns. And it was the most compelling testimony. With all due respect to the Donovan family and the tragedy that they suffered, this evidence was heartbreaking. And there was no reason that it could not have been limited. But the theory was that it was intrinsic. It was all part of the same crime spree. What, that lasted 17 days? Yes, Your Honor. But even if it were intrinsic, it would still be subject to a 403 analysis. And, finally, if they had moved to preclude the evidence in the guilt phase, the analysis would have been under the death penalty statute, which is actually more favorable to the defendant. It doesn't require that the evidence be precluded if it substantially outweighs the probative value, only if it outweighs. So there were strategic things that counsel could have done. But you don't contest that it's not at all uncommon, particularly in death penalty cases, for counsel for the accused to front load evidence like this into the guilt phase in the hopes that it will ameliorate in the minds of the jury by the time they get to the guilt decision. That's not an uncommon practice. Not at all, Your Honor. But you would make effort to limit it. Thank you. Thank you, Mr. Burke. Mr. Booth. May it please the Court. Basham was mentally competent in his trial. The district court made a specific finding that he was mentally competent, and the standard of review is clear error. Basham's arguments don't meet that standard. Mental competency is defined as having an ability to consult with counsel and to understand the proceedings. That's a consequentialist definition. That means that the opinions of the district court judge and the defense attorney are extremely crucial because they have the best insight into whether or not counsel can consult with the defendant, and the judge has a very, very good understanding of whether the defendant can understand the proceedings. In this particular case, both the district court judge in its opinion in the 2255 hearing and lead counsel Jack Swirling at the 2255 hearing both opined that in their opinion, Mr. Basham was competent throughout the trial, and it's specifically both with respect to October 26th and September the 20th. Now, let me go to September 20th to start off with. Again, both the defense attorney and Swirling believed that Basham was competent at that time, and in addition to those particular opinions, this court on direct appeal indicated and stated that Basham was a manipulative individual with respect to his outburst when the district court judge reversed its decision and precluded him from having debt. You can move just a little bit further back from the microphone because we're getting a lot of… I'm sorry, Judge Ajay, I hope this hasn't interrupted my argument. Does this sound a little better? Okay. Sure. In this particular case, what the record shows is not that Basham was incompetent, but that he flew into a rage because the district court overturned its decision to allow him to have debt. That is an expression of irrational or volatile behavior. What this court has said in the Angelo case is not evidence of mental incompetency, and we don't normally reward defendants who throw a fit or a temper tantrum because they don't get what they want. We don't reward defendants who do that sort of thing. Now, again, the standard here is clear error. He hasn't met it. And with respect to Basham's argument that his expert said that Basham was incompetent when he was down in the holding cell afterwards, two answers to that. First of all, Judge Ajay, as you mentioned, there was no trial occurring at that particular time. And second, under the Supreme Court's decision in Maggio v. Fulford, a district court judge does not have to accept the testimony of an expert who testifies as to competency even if that evidence is unrebutted. So in this particular case, the district court's finding is certainly not clearly erroneous. Basham's argument that he met the preponderance standard, first of all, that is a standard at the trial level. It's not at this level. This level is clear error. And as the Supreme Court indicated earlier, if there's two views of the evidence, the fact finder's choice between them cannot be clearly erroneous. Let me turn now to the October 26th session when Basham was admittedly sleepy during part of the afternoon testimony. We don't necessarily know whether it was due to the Seroquel, but it may have been. There are at least two federal court of appeals cases, the Woods case and the Jimenez case, which state that temporary drowsiness or temporary sleepiness at a brief portion at the trial does not constitute mental incompetence as a matter of law. And in this particular case, we would urge this court to follow those two cases and to note in addition to that, if you remember earlier in the case during the suppression hearing testimony in February, is that the defense expert witness who examined Basham after he had had a problem due to an overdose, she examined him at that time and she said he is sleepy because he took excessive Tylenol. He is sleepy, but he is nevertheless competent. So when you consider that testimony, the case law that says that temporary grogginess during a small period of the trial is not mental incompetence as a matter of law, plus Jack Swerling's considered opinion that what happened on October the 26th was an event that may have raised an issue, but Swerling believed that Basham was not incompetent on that day. So when you add up all that evidence in the case law, the district court's finding on this particular point is certainly not clearly erroneous. Let me go back to the question with respect to Sheriff Hewitt. This is sort of related to both an ineffective assistance of counsel claim and a false testimony claim. A lot of this issue, Judge King, as you remember, was brought up by co-defendant Fultz in his 2255, and at that time this court stated that what happened was, as you pointed out earlier, the statement by Hewitt never specifically stated who did the strangling in this particular case. And second of all, even though there was a partial argument by the government to that effect, the government, both in the guilt phase, specifically told the jury that it did not have to find who actually killed Donovan in order to find Basham guilty of the offense. During the penalty phase, the government offered the inference from Hewitt's testimony only to show the intentional killing element, an element that the jury specifically rejected when they came back with the grave risk of death element. So this jury's finding, both in this case and in the Fultz case, by the way, do not rest on any supposition that Basham actually killed Donovan in this case. And the defendant's argument made primarily in his brief is that, well, despite that, that prevented the jury from finding that Basham may have played a lesser role in the offense. Under the facts of this particular case, no jury found that, and there's no reason to believe that they would have, even if the strangulation evidence had been excluded. And the reason is, if you look at the crime spree that occurred in this case, Basham did not play a lesser role at all. If you look at the videotape, he's the person who enters the car to kidnap and carjack Donovan. After the Donovan killing, in other words, after he was away from Fultz, it's Basham who tries to carjack another person in Kentucky and who, when the police arrive, shoots at the police. I mean, there's no way that any jury would have found that he had a lesser role in this offense. When you look at his entire conduct during the crime spree that he had with Fultz. Let me turn now to the third question, which is with respect to the Burns evidence. There's two parts to this. I would like to start out, first of all, with respect to the evidence of the murder. In the first place, the defense attorney objected to this at the penalty phase, so it's not as though they didn't play any role with this whatsoever. At the guilt phase and at the 2255 hearing, Mr. Swirling gave an acceptable and reasonable explanation for not challenging it at the guilt phase. He thought it was going to come in at the penalty phase, as it would have, because that was charged as an aggravating circumstance. And what he said was he wanted to front load the evidence so that at the penalty phase, the jury wouldn't be hearing live testimony of a second murder just before they went to deliberate on a death sentence. And with respect to saying that, well, this case should have been perhaps objected under Rule 403, remember, even though the district court judge in its pretrial ruling decided to admit the evidence on an intrinsic evidence theory, at the close of the trial, the judge reversed itself and decided it would only admit the Burns murder, kidnapping, carjacking evidence on a 404B theory to give an instruction. And at that point, Mr. Swirling made some objections to the instruction and made some modifications. So that showed he was actively involved in this particular issue and he did not passively accept it. In addition to that, if you look at his closing argument in the case, he tried to minimize the impact of the Burns murder evidence by saying that, look, his theory was that Basham didn't have a specific intent to kill Donovan. And then when Burns, I'm sorry, when Basham and Fultz came back after the Burns disappearance, it was Fultz who had the gasoline on him and Basham did not, trying to tell the jury that Basham had nothing to do with this. So the argument that Swirling basically sat back and let this evidence come in under intrinsic evidence theory is simply incorrect. I mean, Mr. Swirling made a very, very calculated choice and it was a reasonable choice. Now, let me go back to the second part of his argument, which is respect to the victim impact statement in this particular case. We've made an argument that this was not properly preserved, but let me go to the merits anyway. With respect to that evidence, it's our contention here that this evidence from the family and from the friends was not victim impact evidence. That type of evidence is defined as evidence that relates to the personal characteristics of the victim and the emotional impact of her death on the family. With one minor exception, the evidence that came in was not victim impact evidence. Remember, the aggravating circumstance in this case was that Basham carjacked, kidnapped, and then caused the death of Burns. So as a result of the kidnapping and carjacking, the government had to show that Burns was taken away against her will, that she didn't simply disappear or willingly went off with him. So it was incumbent upon the government to show circumstantially that this happened, that she had a close relationship with her parents, and she was likely to call them when she was going somewhere to show circumstantially that when she left, it wasn't because she was inclined to say she was not a rebellious teenager. She would have been inclined to call them to show circumstantially that what happened was she was kidnapped and carjacked, not that she went off with them. So there was nothing wrong with this particular evidence, and as Mr. Swerling explained, once it came in, he wasn't going to alienate the jury by vigorously cross-examining the friends and the family. I mean, that would have really turned the jury against him. I've gone on for a while. If I would like to make the arguments I made in my brief, I would be glad to answer any questions that you have. Thank you. Thank you very much. Thank you. I'm going to ask you to affirm the judgment. Mr. Burke. Your Honor, with regard to the testimony of Mr. Swerling at the 2255 hearing, eight or nine years after the events of the trial, we would ask that the court look instead at what trial counsel said with regard to competency at trial. And it is clear that on December 26th, Mr. Swerling told the court that his client was groggy, out of it, and sleeping. There's no doubt about that. Mr. Swerling's core response at the 2255 was, well, I didn't say he was incompetent. And our response is he didn't have to exactly say that word. His client was incompetent. Mr. Harris in the 2255 court counsel, he indicated that he believed, again, still 10 years later, that on the 20th of September, Mr. Basham was not in control of his faculties. With regard to Judge Anderson's decision not to follow Donna Schwartzwass's testimony from September 20th regarding Mr. Basham's competency, he did accept it on September 20th. He accepted it that day, and he adjourned court because of the concerns about Mr. Basham's competency. With regard to the sleeping, I would like to read from the judge's order in this proceeding, where the judge says, with regard to October 26th, the record indicates that Basham was agitated when he arrived in court that morning and that he appeared sleepy during testimony that day. But those behaviors are consistent with the way Basham acted throughout trial. Judge Anderson realized that Mr. Basham was sleeping throughout his trial. And then we have not met, if the court believes we've misled them, regarding the standard with regard to competency. The standard is that we must prove by a preponderance of evidence that Mr. Basham was not competent. We now must persuade this court that Judge Anderson made a clear error in not finding that to be so. We would ask the court to be guided by its decision in Jimenez v. Mary Washington, where it sets forth the analysis that this court should follow when reviewing for clear error. And among the matters to consider are whether the weight of the evidence is contrary to what the district court found, whether the court overlooked, and this is critical here, overlooked substantial evidence contrary to its ruling. And that's what we submit happened here. The judge, rather than listen and acknowledge what he decided back in 2004, overlooked that and found small little bits of facts that might support finding that Mr. Basham was competent on September 20th. And then finally, Your Honors, with regard to the Burns evidence. Let me ask you a question before you get to Burns. My review of this record is that Judge Anderson was exceedingly careful throughout this trial and accommodated the defendant's problems and disruptions with an infinite amount of patience. And it just seems inconsistent to me when I look at the trial as a whole that in this one narrow, these narrow instances where he would have missed or been wrong in the way he handled the outburst and the sleepiness and lack of concentration. I agree, Chief Judge Traxler. Judge Anderson was a model of judicial fairness to both sides. And that's the critical aspect here. He, throughout the trial, went out of his way to accommodate both sides. He was also keenly aware of the expense of this trial and what the effects would be if he was reversed on appeal, which is why he made some very, I think, cautious evidentiary rulings. In fact, he precluded one of the victims' daughters from testifying at all during the penalty phase. So he did make those rulings. The problem is, and the record supports this, that on at least December 26th, the judge did not apply the Dusky Standard. He said, I realize there's a problem, but we just have to go forward. He was at the end of his rope. And it was an incredibly difficult trial. And with all candor, Mr. Basham is an incredibly difficult person to work with. And so we don't view, I mean, and also Judge Anderson went out of his way with regard to the dip. He was trying to help, but it also shows he knew that there was a problem. Well, folks in South Carolina would understand the need for the dip. Thank you, Your Honor. I don't want to cut you off. If you have anything else you'd like to argue. We would simply ask that the court reverse the finding of the district court and grant Mr. Basham $2,255 relief. Mr. Burke, we appreciate you and your office undertaking representation of Mr. Basham in the proceedings. And we know that it is in addition to the work you normally do. So we just want to thank you for representing Mr. Basham. You've done a great job.
judges: William B. Traxler Jr., Robert B. King, G. Steven Agee